(February 13, 1904.)

## COWDEN v. FINNEY, SHERIFF.

### [75 Pac. 765.]

CHATTEL MORTGAGE—UNRECORDED MORTGAGE—ACTUAL NOTICE TO PURCHASER—VALUE OF PROPERTY SEIZED.

    1. Where a chattel mortgage has not been filed for record with the recorder of the county where such property is located, and kept as required by section 3386, Revised Statutes, as amended (Sess. Laws 1899, p. 121), a subsequent purchaser of such property is not bound by the mortgage unless he be shown to have had actual notice of the same.

    2. *Held, further*, that where there is a direct and substantial conflict in the evidence as to whether the purchaser had actual notice of the mortgage, and the trial court finds that he had no such notice, the appellate court will not disturb such finding.

    3. In an action to recover the possession of personal property wrongfully seized, or the value thereof in case a return cannot be had, the plaintiff cannot be limited in his right of recovery to the price for which defendant may have sold the same.

(Syllabus by the court.)

APPEAL from District Court in and for Canyon County. Honorable George H. Stewart, Judge.

Action by plaintiff to recover the possession of a band of sheep, or in case a return thereof cannot be had, for the value thereof. From a judgment in favor of plaintiff and an order denying a motion for a new trial defendant appeals. Affirmed.

Hawley, Puckett & Hawley, for Appellant.

The market value of an article is what it would bring at a fair public sale when one party wanted to sell and the other to buy. (*Kansas City etc. Ry. Co. v. Fisher*, 49 Kan. 17, 30 Pac. 111; *Lawrence v. Boston*, 119 Mass. 128; *Chicago etc. Ry. Co. v. Parsons*, 51 Kan. 415, 32 Pac. 1083.) It is such a sum of money as the property is worth in the market to persons generally who would pay the just and full value. (*Low v. Conrad Ry. Co.*, 63 N. H. 557, 3 Atl. 739; *Esch v. Chicago etc. Ry. Co.*, 72 Wis. 231, 39 N. W. 129; *Muser v. Magone*, 155 U. S. 240, 15 Sup. Ct. Rep. 77, 39 L. ed. 135.) It means the prevailing market rates at the place of delivery, if ascertainable; if not, then at the nearest market less cost of transportation. (*Hill v. McKay*, 94 Cal. 5, 29 Pac. 406.) The proper method of determining market values of commodities is to take the price at a point where there is a market and deduct the cost of transportation and sale. (*Suttle v. Falls*, 98 N. C. 393, 2 Am. St. Rep. 338, 4 S. E. 541; *Siegbert v. Stiles*, 39 Wis. 533; *Lathers v. Wyman*, 76 Wis. 616, 45 N. W. 669.) While it may be contended that this court will not inquire into sufficiency of the evidence to justify the findings where there is a substantial conflict, and that such conflicts exist in this case, we will urge that where the particular finding is based wholly or in part upon evidence that should have been excluded, or where such finding is against the great weight of evidence, then if the matter is material, a reversal will be had, or the judgment will be modified. Before entering upon a discussion of the particular findings complained of, we will briefly call the attention of the court to the mortgage in question here. That this mortgage is defective, we admit. It does not contain the affidavit of Shaw, the maker, nor was it recorded in the proper

county. It also purports to be on sheep owned by said Shaw alone, and some evidence has been introduced tending to show said sheep were owned by said Shaw alone, and some evidence has been introduced tending to show said sheep were owned by Shaw & Gowan. This last proposition, however, we dispute. The statute requires an affidavit, and the lack of one would vitiate it as against persons without notice, but such a mortgage is valid against one who had knowledge of its having been made. (*Roberts v. Crawford,* 58 N. H. 499.) Nor can the fact of the mortgage not having been recorded in the right county be urged against our contention here, as Cowden, if he had knowledge of the mortgage, was barred by it. (*Kern v. Wilson,* 82 Iowa, 407, 48 N. W. 919; *Cameron v. Marvin,* 26 Kan. 612; *Wilson v. Leslie,* 20 Ohio, 161; *Forrester v. Kearney Nat. Bank,* 49 Neb. 655, 68 N. W. 1059; *Cragin v. Carmichael,* 6 Fed. Cas. 706, 2 Dill. 519.) Notice may be implied from knowledge of facts calculated to suggest to a reasonably prudent person inquiries which, if made, would have led to actual knowledge of the existence of the mortgage. (Harmon on Chattel Mortgages, 139, and cases cited; *Foster v. Gillespie,* 68 Mo. 643; *Moline Plow Co. v. Braden,* 71 Iowa, 141, 32 N. W. 247.)

Frank J. Smith and W. E. Borah, for Respondent.

We assume from counsel's argument that the invalidity of the mortgage is admitted, provided Cowden had no notice, actual or constructive, of the same. As to the constructive notice, in the first place, as we have stated, the mortgage was never recorded in the county where the sheep were kept at time of execution. In the second place, the description in the mortgage was such as to give no notice to a man purchasing the sheep in question. In the third place, the mortgage was by an individual; the purchase was of a firm and the property belonged to the firm. In the fourth place, the mortgage, when filed, was not properly verified or acknowledged and, therefore, even had it been on record in the proper county, would not have constituted constructive notice; that is to say, had the mortgage actually been of record in Canyon county, it would

not have constituted constructive notice. "Proof of notice should come from the one claiming the personal property under the alleged mortgage." (*Manhattan Co. v. Seattle Co.,* 16 Wash. 499, 48 Pac. 339, 737; Jones on Chattel Mortgages, secs. 248, 255; *Frank v. Miner,* 50 Ill. 444; *Hill v. Gilman,* 39 N. H. 38; *Becker v. Anderson,* 11 Neb. 493, 9 N. W. 640; *Tabor v. Sampson,* 7 Colo. 426, 4 Pac. 47; *Dunsmuir v. Port Angeles etc. Co.,* 24 Wash. 104, 63 Pac. 1098; *Alferitz v. Scott,* 130 Cal. 474, 62 Pac. 735; *Adams v. Bank,* 53 Iowa, 491, 5 N. W. 619; *Waterhouse v. Black,* 87 Iowa, 317, 54 N. W. 342.) It appears from our statute that a chattel mortgage is void unless the same is recorded with the county where such property is located and kept. (Sess. Laws 1899, p. 121; *First Nat. Bank v. Sayler,* 4 Okla. 408, 50 Pac. 76, 77; *Turner v. Caldwell,* 15 Wash. 274, 46 Pac. 235; *Chase v. Tacoma Co.,* 11 Wash. 377, 39 Pac. 642; *American Co. v. Champion,* 57 Kan. 352, 46 Pac. 696; Jones on Chattel Mortgages, sec. 237; *Stevenson v. Browning,* 48 Ill. 78; *Gaff v. Harding,* 48 Ill. 148; *McVay v. English,* 30 Kan. 368, 1 Pac. 797; *Wilson v. Leslie,* 20 Ohio, 161; *Platt v. Stewart,* 13 Blatchf. 481, 19 Fed. Cas. No. 11,220; *Stone v. Mississippi,* 101 U. S. 816, 25 L. ed. 1079; *Lane v. Mason,* 5 Leigh (Va.), 520; *Ruggles v. Cannedy* (Cal.), 53 Pac. 911; *Karst v. Gane,* 136 N. Y. 316, 32 N. E. 1073; *Crippen v. Fletcher,* 56 Mich. 586, 23 N. W. 57.) A mortgagor of chattels after the execution of the mortgage and before it was recorded removed the property to another county. The mortgage was subsequently recorded in the original county but not in the county to which the property was removed until after an attachment. Held, that the mortgage was inoperative as against the attachment creditor. (*Fassett v. Wise,* 115 Cal. 316, 47 Pac. 47, 1095, 36 L. R. A. 505; *Tabor v. Sampson,* 7 Colo. 426, 4 Pac. 45; *Grimes Co. v. McKee,* 51 Kan. 704, 33 Pac. 594.)

AILSHIE, J.—This action was commenced by the plaintiff against the defendant as sheriff in the district court of Blaine county for the recovery of the sum of $21,474 as the value of a band of sheep which had been seized by the sheriff and for damages for the detention thereof. The defendant answered

and admitted the seizure of the property, and justified the same under a chattel mortgage executed by one R. L. Shaw, alleging that due and regular affidavit and notice had been delivered to him, requiring him to seize and sell the property in payment of the mortgage debt under the provisions of the statute providing for foreclosure proceedings of chattel mortgages.

By a stipulation of the respective parties, the cause was transferred to Canyon county, and was there tried before the court without a jury. After all the evidence was introduced and the case was finally submitted, the court made his findings of fact and conclusions of law, and thereupon entered judgment in favor of the plaintiff for the sum of $8,281.35, as the value of two thousand six hundred and twenty-nine head of sheep unlawfully seized and sold by the defendant, and for the costs of the action.

It appears from the record that on November 30, 1901, R. L. Shaw and J. B. Gowan were partners engaged in the sheep business in Canyon county and neighboring counties, and that on that date Shaw executed and delivered to the Flato Commission Company, a corporation, a chattel mortgage for the sum of $18,625.55, covering a large number of sheep, cattle and other personal property, and reciting therein that the sheep were located and kept in Ada county, state of Idaho. This mortgage was executed by Shaw individually and it appears to have been for his individual debt, and purported to be given upon his individual property. It was not accompanied by an affidavit as required by section 3386, Revised Statutes (Sess. Laws 1899, 121). Shaw had no such property in Ada county, and none of the Shaw-Gowan sheep appear to have ever been kept in that county, but were at the time of the execution of the mortgage in Canyon county. In the spring of 1902, about two thousand one hundred head were taken to Blaine county. The mortgage was never filed for record in Canyon county, and was not filed until July 23, 1902, in Blaine county—the county where the property was found and seized by the defendant sheriff on the following day.

After executing this mortgage, Shaw disappeared, and while it does not appear just when he left the country, it is conceded

that it was prior to June 8, 1902. His whereabouts since that date seems to be a mere matter of speculation, and it appears that many persons have been anxious to see him. At this time the firm of Shaw & Gowan was indebted in the sum of $4,000, and their creditors were beginning to urge payment. Thereafter, and on June 10, 1902, Gowan sold all the sheep belonging to the firm of Shaw & Gowan to the plaintiff in this action. At the time of the sale about two thousand one hundred head of the sheep were in Blaine county and the balance were in Boise county. It should be remembered that up to this time the Flato Commission Company's mortgage had never been filed for record in either of the counties of Blaine or Canyon, and could therefore give constructive notice to no one dealing with the property in those counties.

Upon the trial the defendant sheriff introduced evidence tending to show that the plaintiff Cowden had actual notice of the execution of the mortgage prior to the time of the purchase of the property which purported to have been covered by the mortgage. On this point there is a direct conflict, Cowden denying positively that he had any intimation as to the existence of the mortgage, while one witness for the defendant claims that either on the day prior to the purchase, or the day of the purchase, appellant told the witness about Shaw's conduct and of the existence of this particular mortgage.

There are some things connected with this purchase on the part of the appellant which do not entirely satisfy us of the fairness of the transaction, and if the evidence as presented in the record were before us in the first instance for our consideration, we might find differently; but since there is a direct conflict in the evidence upon this point and the trial court has heard the same and made his findings thereon, we cannot disturb such findings and judgment.

Several other questions have been discussed in this case, but we will only notice the objections urged to the rulings of the court as to the admission and rejection of evidence. The plaintiff was permitted to introduce some evidence that we think was immaterial to prove any issue in the case; but since we have concluded that appellant could not have succeeded at the

trial upon any theory of the case without showing that plaintiff had, prior to the purchase of the property, either *actual* or *constructive* notice of the execution of that mortgage, and none of the evidence of which appellant here complains having been directed either to the proving or disproving of this particular issue, its admission or rejection could not have in any way affected him as to the final result of his case. We therefore conclude that appellant was not prejudiced by the action of the court in reference to the admission or rejection of such evidence.

Appellant also complains of the action of the court in receiving testimony as to the value of the property at the time and place of its seizure by the sheriff. We have carefully examined all this testimony, and think it was competent and properly admitted, and that the value allowed the plaintiff was fairly established by the proofs. Counsel argues that the plaintiff should have been limited in his right of recovery to the amount for which the property was actually sold in the Chicago market, less the cost and expenses of delivering them to that market. We cannot agree to such a method of fixing the value of property which has been wrongfully converted. The price received might or might not be the true value of the property, but the plaintiff in such cases cannot be limited in his right of recovery to any bargains the defendant may make as to the price thereof.

The judgment and order denying a new trial are affirmed, with costs to respondent.

Sullivan, C. J., and Stockslager, J., concur.